Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHERIE JOHNSON,<br><br> Plaintiff,<br><br>v.<br><br>AIRCASTLE LIMITED, PETER V. UEBERROTH, RONALD W. ALLEN, GIOVANNI BISIGNANI, MICHAEL J. CAVE, DOUGLAS A. HACKER, JUN HORIE, TAKASHI KURIHARA, TAKAYUKI SAKAKIDA, RONALD L. MERRIMAN, AGNES MURA, CHARLES W. POLLARD, and MICHAEL J. INGLESE,<br><br> Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Sherie Johnson ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Aircastle Limited ("Aircastle" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections

1

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between Aircastle and MM Air Limited ("Parent") and MM Air Merger Sub Limited ("Merger Sub"), a wholly-owned subsidiary of Parent. Parent is controlled by affiliates of Marubeni Corporation ("Marubeni") and Mizuho Leasing Company, Limited ("Mizuho Leasing").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements and/or omissions entered, and the subsequent damages occurred, in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Aircastle's common shares.

7. Defendant Aircastle, through its subsidiaries, leases, finances, sells, and manages commercial flight equipment to airlines worldwide. The Company is incorporated in Bermuda. The Company's common shares trade on the New York Stock Exchange under the ticker symbol, "AYR."

8. Defendant Peter V. Ueberroth ("Ueberroth") is Chairman of the Board of the Company.

9. Defendant Ronald W. Allen ("Allen") is a director of the Company.

10. Defendant Giovanni Bisignani ("Bisignani") is a director of the Company.

11. Defendant Michael J. Cave ("Cave") is a director of the Company.

12. Defendant Douglas A. Hacker ("Hacker") is a director of the Company.

13. Defendant Jun Horie ("Horie") is a director of the Company.

14. Defendant Takashi Kurihara ("Kurihara") is a director of the Company.

15. Defendant Takayuki Sakakida ("Sakakida") is a director of the Company.

16. Defendant Ronald L. Merriman ("Merriman") is a director of the Company.

17. Defendant Agnes Mura ("Mura") is a director of the Company.

18. Defendant Charles W. Pollard ("Pollard") is a director of the Company.

19. Defendant Michael J. Inglese ("Inglese") is the Chief Executive Officer and a director of the Company.

20. Defendants Horie, Kurihara, and Sakakida are collectively referred to as the "Marubeni Directors."

21. Defendants Ueberroth, Allen, Bisignani, Cave, Hacker, Horie, Kurihara, Sakakida, Merriman, Mura, Pollard, and Inglese are collectively referred to herein as the "Individual Defendants."

22. Defendants Aircastle and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

23. On November 6, 2019, Aircastle issued a press release announcing that it had entered into a definitive agreement to be acquired by a newly-formed entity controlled by affiliates of Marubeni and Mizuho Leasing. Under the terms of the merger agreement, Aircastle shareholders would receive $32.00 in cash for each common share of Aircastle (other than shares already owned by Marubeni and its affiliates). The press release states, in pertinent part:

> **Aircastle Limited Enters into Merger Agreement with Affiliates of Marubeni and Mizuho Leasing**
>
> NEWS PROVIDED BY
> **Aircastle Limited**
> Nov 06, 2019, 06:00 ET
>
> STAMFORD, Conn., Nov. 6, 2019 /PRNewswire/ -- Aircastle Limited (NYSE: AYR) ("Aircastle") announced today that it has entered into a definitive agreement to be acquired by a newly-formed entity controlled by affiliates of Marubeni Corporation ("Marubeni") and Mizuho Leasing Company, Limited ("Mizuho Leasing"). Under the terms of the merger agreement, Aircastle shareholders will receive $32.00 in cash for each common share of Aircastle (other than shares already owned by Marubeni and its affiliates), representing a total valuation of approximately $2.4 billion, or approximately $7.4 billion including debt obligations to be assumed or refinanced net of cash.
>
> \*   \*   \*
>
> The transaction is subject to customary closing conditions, including approval by Aircastle's shareholders and receipt of certain regulatory approvals, and is expected to close in the first half of 2020. Marubeni has agreed to vote the common shares of Aircastle that Marubeni and its affiliates beneficially own in favor of the transaction.
>
> Given the pending transaction, Aircastle will not host a third quarter earnings call and will not release its third quarter financial results for the period ended September 30, 2019 until Aircastle files its third quarter Form 10-Q.

Citigroup Global Markets Inc. is acting as the exclusive financial advisor to Aircastle and Skadden, Arps, Slate, Meagher & Flom LLP and Conyers LLP are acting as Aircastle's legal advisors.

24. On December 6, 2019, Defendants filed with the SEC a Schedule 14A Preliminary Proxy Statement pursuant to Section 14(a) of the Exchange Act (the "Proxy Statement") in connection with the Proposed Transaction.

25. According to the Proxy Statement, Marubeni and its affiliates own approximately 28.8% of the outstanding common shares of the Company and have agreed to vote their shares in favor of the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

26. The Proxy Statement, which recommends that Aircastle shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the financial analyses performed by Aircastle's financial advisor, Citigroup Global Markets Inc. ("Citi"), in connection with its fairness opinion; and (ii) the sales process leading up to the Proposed Transaction.

27. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Purpose and Reasons of the Company for the Merger; Position of the Company as to Fairness of the Merger; Recommendation of the Board of Directors; and (iii) Opinion of Citigroup Global Markets Inc.

28. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, Aircastle shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages

5

resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Citi's Financial Analyses

29.    In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Citi.

30.    The Proxy Statement fails to disclose the following concerning Citi's "*Selected Companies Analysis*": (1) the calendar years 2019 and 2020 estimated pre-tax income for each of the selected companies; (2) the calendar years 2019 and 2020 estimated revenues for each of the selected companies; (3) the book value as of June 30, 2019 for each of the selected companies; and (4) the individual inputs and assumptions underlying the illustrative ranges of multiples of (i) price to book value of 0.89x to 0.96x, (ii) price to calendar year 2020 estimated pre-tax income of 5.5x to 7.1x and (iii) price to calendar year 2020 estimated earnings of 7.2x to 7.9x.

31.    The Proxy Statement fails to disclose the following concerning Citi's "*Discounted Dividends Analysis*": (1) the dividends distributable by Aircastle during the period from October 1, 2019 through December 31, 2023 purportedly based on the "Aircastle Projections" and all relevant line items thereto; (2) the illustrative terminal values for Aircastle as of December 31, 2023; (3) Citi's basis that Aircastle's "gross debt to equity would be equal [to] 2.5x"; (4) the individual inputs and assumptions underlying the (i) range of price to book value exit multiples of 0.8x to 1.0x, and (ii) discount rates ranging from 8.1% to 9.4%; and (5) Aircastle's estimated book value as of December 31, 2023.

32.    The valuation methods, underlying assumptions, and key inputs used by Citi in rendering its purported fairness opinion must be fairly disclosed to Aircastle shareholders. The description of Citi's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without this information, the Company's shareholders are unable to fully understand Citi's fairness opinion and analyses, and are thus unable to determine

6

how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Aircastle shareholders.

**2. Material Omissions Concerning the Sales Process Leading to the Proposed Transaction**

33. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

34. The Proxy Statement fails to disclose Citi's basis for "inform[ing] representatives of Party C that a potential partial asset sale transaction would likely not maximize value for the Company's shareholders compared to a whole company transaction."

35. The Proxy Statement provides that, "[o]n October 16, 2019, . . . [t]he Transaction Committee[1] . . . discussed with representatives of Citi and considered the Company's standalone business prospects in the absence of a strategic transaction." The Proxy Statement, however, fails to disclose the specific nature of the Transaction Committee's discussion with Citi regarding the Company's standalone business prospects in the absence of a strategic transaction.

36. The Proxy Statement provides that "[f]rom October 24, 2019 to October 31, 2019, certain Company officers and Citi received in-bound requests for information and preliminary inquiries regarding a strategic transaction from seven separate financial sponsors." The Proxy Statement summarily states that "[a]fter further discussions, none of the third parties pursued a transaction or made a proposal." The Proxy Statement fails to disclose the nature of these "further discussions," including who participated, the content of the discussions, and whether and to what

---

[1] In connection with the Board's evaluation of strategic alternatives, the Board established the "Transaction Committee," consisting of Defendants Ueberroth, Cave, Hacker, and Pollard. *See* Proxy Statement at 18.

7

extent terms, values, and/or potential financing issues were discussed between the parties.

37. The Proxy Statement fails to disclose how discussions concluded between the Company and Party B regarding a potential transaction.

38. This omitted information, if disclosed, would significantly alter the total mix of information available to Aircastle shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

41. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

42. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

43. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

48. In particular, each of the Individual Defendants had direct and supervisory

9

involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants (other than the Marubeni Directors) to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 21, 2020                     Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
          zhalper@halpersadeh.com

*Counsel for Plaintiff*